UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PRICE TRUCKING CORP.,

                        Plaintiff,

                                                                      **Hon. Hugh B. Scott**

                        v.

                                                                       09CV990A

                                                                       **Report**
                                                                         **&**
NORAMPAC INDUSTRIES, INC.,             **Recommendation**

                        Defendant.

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 6). At the scheduling conference for this matter, the parties indicated that they would file early dispositive motions (Docket No. 10) and the Court issued a briefing schedule for such motions (Docket No. 11), with motions due by March 31, 2010, responses by April 30, 2010, and any replies by May 14, 2010 (id.). A Scheduling Order was not entered at that time (Docket No. 10). The instant matters before the Court are (a) plaintiff's motion for partial summary judgment (Docket No. 12[1]) and (b) defendant's motion for summary judgment (Docket

---

[1] In support of this motion, plaintiff submitted its Rule 56.1 Statement of Undisputed Material Facts; the Affidavit of Jonathan Price, vice president of Price Trucking Corp.; its attorney's affidavit with exhibits; a Stipulation of Facts; Memorandum of Law, Docket No. 12; and its reply Memorandum of Law, Docket No. 17; as well as its opposing papers to defendant's motion for summary judgment. In opposition, defendant submits its Memorandum of Law, Docket No. 15, as well as its own motion for summary judgment, described below.

No. 13[2]).  Following review of the extensive papers in both motions, the matter was deemed submitted, without oral argument, on May 14, 2010 (see Docket No. 11).

## BACKGROUND

Plaintiff Price Trucking Corp. ("Price Trucking" or "plaintiff") commenced this action under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9607 ("CERCLA").  According to the stipulation of the parties (Docket No. 12, Stipulation; Docket No. 13, Def. Atty. Aff., Ex. A, hereinafter the "Stipulation"; see also generally Docket Nos. 12, Pl. Rule 56.1 Statement, 13, Def. Rule 56.1 Statement), since 1997 defendant Norampac Industries ("Norampac" or "defendant") has owned a parcel of land at 3241 Walden Avenue, Depew, New York (the "Site") (Stipulation ¶ 1).  Investigations performed by Norampac at the Site determined that levels of metals, including lead, and other contaminants found in the soil exceeded clean up standards of the New York State Department of Environmental Conservation ("DEC") (Stipulation ¶ 2).  Norampac remediated the contaminated soils at the site pursuant to a Brownfield Cleanup Agreement (or "BCA") with the DEC, contracting with AAA Environmental, Inc. ("AAA") to perform the remediation (Stipulation ¶¶ 3, 4).  Included in the remediation was the excavation and hauling of contaminated soils from the Site to licensed facilities for disposal (id. ¶ 4).  Norampac did not require AAA to procure a bond or provide other security to assure AAA's performance under their remediation agreement or for payment of

---

[2]In support of this motion, defendant submits the affirmation of counsel, with exhibit (the stipulation of facts); its supplemental Local Rule 56.1 Statement; the Affidavit of Leon Martineau, vice president-Environment for Cascades, Inc.; Memorandum of Law, Docket No. 13; and Reply Memorandum of Law, Docket No. 18.  In opposition, plaintiff submits (in addition to its own motion for partial summary judgment) its Memorandum in Opposition; the Supplemental Affidavit of plaintiff's counsel with exhibits, Docket No. 14.

subcontractors, material suppliers, vendors and laborers that AAA subcontracted pursuant to that remediation agreement (id. ¶ 5). That agreement did require Norampac to make progress payments to AAA upon receipts from AAA of applications for such payments accompanied by affidavits stating that all previous payments had been applied to pay all subcontractors, material suppliers, vendors, and laborers (id. ¶ 6). The Remediation Contract also required that, before Norampac would pay AAA's final payment under the contract, AAA would supply (a) a list of unsettled claims, and furnish (b)(i) complete and legally effective releases or waivers of lien rights, or (b)(ii) receipts or releases, with an affidavit, reflecting payments to the subcontractors, material suppliers, vendors and laborers (id. ¶ 7).

AAA subcontracted with Price Trucking to haul contaminated soils from the Site to licensed disposal facilities (the "Price Trucking Subcontract") (id. ¶ 8). During 2007 and 2008, Price Trucking hauled contaminated soils from the Site to licensed disposal facilities, including EQ- The Environmental Quality Company ("EQ") and Envirite of Ohio, Inc. ("Envirite"), where it arranged for the disposal of the contaminated soils (id. ¶ 9). AAA initially paid Price Trucking for certain of its hauling and disposal services, but later stopped paying Price Trucking for those services on or about October 6, 2008 (id. ¶ 10). After AAA refused to pay outstanding invoices for work performed under the Price Trucking Subcontract, Price Trucking stopped its work at the Site until Norampac agreed to designate Price Trucking as a joint payee on all checks for subsequent services performed (id. ¶ 11).

Remediation of the Site pursuant to the BCA was substantially completed as of September 19, 2008 (id. ¶ 14), with Tighe & Bond (Norampac's remediation engineer) preparing a Final Engineering Report, on behalf of Norampac, that certified to the DEC that the

remediation performed at the Site was completed and that Norampac had complied with all requirements of the BCA's remedial program for the Site (¶ 15). The DEC has issued a Certificate of Completion, pursuant to the BCA, for the remediation of the Site (id. ¶ 16). Norampac paid more than $3 million to AAA for the remediation of the Site, in addition to those payments made directly to Price Trucking (id. ¶ 12). Other subcontractors that provided services to the Site, in addition to Price Trucking, also have not been paid in full by AAA (id. ¶ 13).

Price Trucking hauled contaminated soils from the Site for disposal at the licensed disposal facilities in full compliance with the requirements of the BCA, the Remediation Contract, the Price Trucking Subcontract, and all applicable laws and regulations (id. ¶ 17), and without any objection from DEC, Norampac, or AAA (id. ¶ 18).

On November 16, 2009, Price filed a lien foreclosure action, among other claims, in New York State Supreme Court, Erie County, seeking to recover its unpaid accounts. That action is pending. (Id. ¶ 19; see Docket No. 12, Pl. Atty. Aff. Ex. 1, state action Ans.)

Norampac is a "person" as that term is defined in CERCLA § 101(21), 42 U.S.C. § 9601(21), as is Price Trucking (Stipulation ¶¶ 20, 21). The Site is a "facility" as that term is defined in CERCLA §101(9), 42 U.S.C. §9601(9) (id. ¶ 22). The parties agree that there have been "releases" and/or "threatened releases" of "hazardous substances" at and/or from the Site within the meaning of CERCLA § 101(14) and (22), 42 U.S.C. § 9601(14) and (22) (id. ¶ 23).

Plaintiff filed its Complaint on November 16, 2009 (Docket No. 1), seeking to recover over $780,000 it invoiced for remediation services (id. ¶¶ 22, 38). Defendant answered and asserted counterclaims (Docket No. 4), which plaintiff replied to (Docket No. 8).

*Plaintiff's Motion for Partial Summary Judgment*

Plaintiff seeks partial summary judgment on liability against defendant (Docket No. 12, Notice of Motion). It argues that it is entitled to recover as costs of response from defendant for remediation performed by plaintiff, despite the fact that defendant paid its general contractor (who later diverted that payment from its subcontractor, plaintiff) for that same remediation (see Docket No. 12, Pl. Memo. at 1-2, 4-12; see also Docket No. 14, Pl. Memo. in Opposition at 3-13). The diversion of funds by the general contractor is not a defense for the defendant owner to avoid liability to the subcontractor that rendered remediation services (Docket No. 12, Pl. Memo. at 1; see id. at 12-13; Docket No. 14, Pl. Memo. in Opposition at 5). Plaintiff claims that it proved all the elements for a CERCLA response costs recovery claim, that is

> "(1) that the Premises are a 'facility;' (2) that there was a 'release' of a 'hazardous substance' at the facility; (3) that Price Trucking is a 'person;' (4) that Price Trucking incurred 'costs of response' that were necessary and consistent with the National Contingency Plan; and (5) that Norampac is a 'covered person' or, in other words, falls within one of four classes of responsible persons described in CERCLA § 107(a) (which includes an owner of the facility from which the release of hazardous substances occurred),"

see, e.g., Consol. Edison of N.Y., Inc. v. UGI Utils., Inc., 423 F.3d 90, 94 (2d Cir. 2005) (Docket No. 12, Pl. Memo. at 4-7, 5). Plaintiff also seeks dismissal of defendant's affirmative defenses and counterclaims (id. at 12-15).

In response to defendant's motion, plaintiff also argues that it can recover its response costs from its contractor AAA (Docket No. 14, Pl. Memo. in Opposition at 13-14). Defendant further contends that dismissal of its defenses and counterclaims is either premature on this record or dismissal is not applicable to its damages assertions on plaintiff's partial summary judgment motion based upon liability (Docket No. 15, Def. Memo. in Opposition at 5-6).

5

*Defendant's Motion for Summary Judgment*

Defendant moves for summary judgment dismissing this action arguing that plaintiff's costs of response are not recoverable from defendant because those costs have already been recovered when defendant paid its contractor AAA (Docket No. 13, Def. Memo. at 3-6). Defendant also contends that plaintiff's response did not comport with the National Contingency Plan ("NCP"), 42 U.S.C. § 9607(a)(4)(B) (id. at 6-8).

Plaintiff denies that the response costs have been recovered already and contends that recovery of these costs is consistent with the NCP (Docket No. 14, Pl. Memo. in Opposition at 1, 6-11). Defendant's payments to AAA, which plaintiff terms "voluntary and ill-advised" (id. at 1) is not a defense to plaintiff's cost recovery claim (id. at 1, 5-6).

**DISCUSSION**

I.  Summary Judgment Standard

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(c). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant. Ford, supra, 316 F.3d at 354. "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty

Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997). While the moving party must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), the party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir. 2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56.1(a), (b). The movant is to submit facts in which there is no genuine issue, id. R. 56.1(a), while the opponent submits a statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56.1(b). All material facts stated in movant's statement that are not controverted by opponent's counter-statement shall be deemed admitted, id. R. 56.1(c). Here, the parties stipulated to the relevant facts and each do not contend that material facts are in dispute.

II.     Application–Cost Recovery under CERCLA

The issue here is whether plaintiff can recover from defendant the recovery costs incurred by plaintiff, although defendant claims that these same costs had been paid to another party, the general contractor which subcontracted with plaintiff.

Section 107 of CERCLA provides

> "[n]otwithstanding any other provision or rule of law, and subject only to the defenses set forth in subsection (b) of this section –
> (1) the owner and operator of . . . a facility, . . . from which there is a release, or a threatened release which causes the incurrence of response costs, of a hazardous substance, shall be liable for –
> . . . (B) any other necessary costs of response incurred by any other person consistent with the national contingency plan…"

42 U.S.C. § 9607(a). Thus, by its terms CERCLA is restricted to four statutory defenses, an act of God, an act of war, third party action, or a combination of these three, id., § 9607(b)[3]. The third party defense applies for the act or omission of someone other than an employee or agent of the defendant or other "than one whose act or omission occurs in connection with a contractual relationship, existing directly or indirectly, with the defendant," id.

The purpose of CERCLA is to provide prompt clean up of hazardous waste sites, see United States v. Bestfoods, 524 U.S. 51, 55 (1998); Key Tronic Corp. v. United States, 511 U.S. 809, 814 (1994), and to impose clean up and related costs upon the owner and operator of the sites, see W.R. Grace & Co.-Conn. v. Zotos, Int'l, Inc., 559 F.3d 85, 88 (2d Cir. 2009); B.F. Goodrich Co. v. Murtha, 958 F.2d 1192, 1198 (2d Cir. 1992) (see Docket No. 12, Pl. Memo. at 2, 15; Docket No. 13, Def. Memo. at 3); see also Blasland, Bouck & Lee, supra, 283 F.3d at 1304 (congressional intent of CERCLA to have pollution cleaned up as quickly as possible and to see that responsible polluters are made to pay for the cleanup). The act is "designed to encourage private parties to assume the financial responsibility of cleanup by allowing them to seek

---

[3]In response, defendant points out other statutory defenses contained in CERCLA, Docket No. 15, Def. Memo. in Opposition at 3; see also Blasland, Bouck & Lee, Inc. v. City of N. Miami, 283 F.3d 1286, 1303 (11th Cir. 2002) (listing other statutory defenses). But those other statutory defenses are not applicable to the claim asserted here under § 107 of the Act, see Docket No. 17, Pl. Reply Memo. at 5.

recovery from others," Key Tronic, supra, 511 U.S. at 819 n.13. As in its title (and as noted by defendant, Docket No. 13, Def. Memo. at 3) CERCLA is a comprehensive law governing remediation of hazardous waste sites (see Docket No. 13, Def. Memo. at 3, citing Consol. Edison, supra, 423 F.3d at 94).

As stated by plaintiff, the elements for a cost recovery claim under CERCLA are that the premises are a "facility," that there was a "release" of a "hazardous substance," that the remediator was a "person" under CERCLA, that this person incurred "costs of response" that were necessary and consistent with the NCP, and the defendant owner is a "covered person" under CERCLA, id. (Docket No. 12, Pl. Memo. at 5 & n.2).

A. Costs of Response

Here, within the CERCLA scheme, is a classic client-general contractor-subcontractor dispute where the general contractor deprives the subcontractor of its pay. The client has paid the contractor for services rendered through a subcontractor but that contractor has not then paid the subcontractor. Within the CERCLA context, defendant, as client, ostensibly paid the response costs by paying its contractor AAA, but AAA failed to pay its subcontractor, the plaintiff, for rendering the remediation services. Should, as plaintiff suggests (cf. Docket No. 14, Pl. Memo. in Opposition at 14), defendant pay twice (to AAA and to plaintiff) for the same response costs (or potentially, as defendant argues, Docket No. 13, Def. Memo. at 5, multiple times for each subcontractor or supplier not paid by AAA)?

Defendant answers no; arguing that the limited precedent on this point does not hold that a Potentially Responsible Party (or "PRP") such as defendant has to pay the same cost twice "until all of the moneys finally wind up in all of the right hands" (Docket No. 13, Def. Memo. at

9

5). Defendant points out that plaintiff as the jilted subcontractor has potential state law contract claims it could assert against the contractor and need not commence a federal action under CERCLA, especially where defendant has met its CERCLA obligations in paying (someone) for the remediation (Docket No. 15, Def. Memo. in Opposition at 2). Defendant also replies that it owed no duty (contractual or otherwise) to plaintiff since plaintiff was a subcontractor of AAA (Docket No. 18, Def. Reply Memo. at 1-2).

But the failure of the PRP's contractor to pay its subcontractors is not a defense recognized under CERCLA. This failure does not fall within the ambit of the third party actor defense (one of the statutory defenses recognized under CERCLA) since it directly arises from the contractual relationship between the owner/operator defendant and the general contractor AAA (see Docket No. 12, Pl. Memo. at 12, 13; see also Docket No. 14, Pl. Memo. in Opposition at 1), see also Blasland, Bouck & Lee, Inc. v. City of N. Miami, 96 F. Supp. 2d 1375, 1382 (S.D. Fla. 2000), aff'd in part, rev'd in part, 283 F.3d 1286 (11th Cir. 2002). Plaintiff argues that the city defendant's "pay when paid" contract provision, that it would pay the contractor when the city was reimbursed by the State of Florida, was not a defense in a CERCLA claim by a contractor for remediation services rendered, but was a contractual waiver or release (id. at 8-9). In Blasland, Bouck & Lee, the contractor argued (among other grounds) that enforcing the city's provision "would undermine CERCLA's goals of prompt remediation of hazardous sites and requiring responsible parties to pay for their pollution," 96 F. Supp. 2d at 1382, but the court held that the contractor could waive that right to sue for the money due the city from the State of Florida as a matter of contract law, id. The Eleventh Circuit reversed in part on this issue, holding that, under CERCLA, the city could not invoke the "pay when paid" provision as an

10

equitable defense to the contractor's claim where § 107(b) provides for only three statutory defenses as well as other statutory defenses within CERCLA, Blasland, Bouck & Lee, supra, 283 F.3d at 1301-06. The Eleventh Circuit noted there that a private "innocent party" (as opposed to the federal government forced to clean a site) can recover under CERCLA § 107(a) in rare instances, id. at 1302 (citing cases).

Plaintiff argues that three cases are on point supporting its contention that it can make this claim under CERCLA (Docket No. 12, Pl. Memo. at 7-9, 15; but cf. Docket No. 13, Def. Memo. at 4; Docket No. 15, Def. Memo. in Opposition at 2 n.1), OHM Remediation Servs. v. Evans Cooperage Co., 116 F.3d 1574, 1579 (5th Cir. 1997) (rejecting "protectable interest" theory for CERCLA costs); Blasland, Bouck & Lee, supra, 96 F. Supp. 2d at 1377, 1382 (defenses recognized under CERCLA); Veolia ES Spec. Servcs., Inc. v. Techsol Chem. Co., No. 3:07-0153, 2007 WL 4255280, at *4-7 (S.D. W. Va. Mar. 30, 2007) (also rejecting "protectable interest" theory). See also Differential Development-1994, Ltd. v. Harkrider Distrib. Co., 470 F. Supp. 2d 727, 753 (S.D. Tex. 2007) (finding that OHM stands for proposition that independent contractors could recover under § 107(a) of CERCLA from PRP). These cases allowed contractors to assert CERCLA claims against PRPs for remediation costs they incurred. These three cases, however, involve the general (or sole) contractor making a claim for remediation services rendered to the owner; none of these cases involved subcontractors who remained unpaid for remediation services performed under a subcontract.

Plaintiff also argues that defendant need not pay twice, provided that it pays plaintiff for remediation services rendered. Plaintiff points out that defendant has a state action pending

against AAA in which defendant can recover the amounts paid to AAA that were diverted from plaintiff. (Docket No. 14, Pl. Memo. in Opposition at 2, 13-14).

The goals of CERCLA of remediation and owner/operator liability for remediation costs are met if plaintiff (which rendered remediation services) is paid by the party ultimately responsible for the waste remediated, defendant. The parties argue whether imposition of these costs would encourage or discourage these cleanups (compare Docket No. 13, Def. Memo. at 5-6 with Docket No. 14, Pl. Memo. in Opposition at 11-13). Owner/operators such as defendant have an external obligation to clean hazardous sites, from enforcement activities of federal and state agencies. The question here is how service providers get paid for remediation services rendered.

Ultimately, plaintiff is a "person" and an "innocent private party" that preformed remediation services that defendant as PRP is obliged to pay their response costs. Given the absence of cases like this (a subcontractor seeking recovery directly from the owner or operator for remediation services rendered), this is the rare instance of the private party entitled to recover under CERCLA. As noted by the Eleventh Circuit in the Blasland, Bouck & Lee case, the result (and the potential for the owner paying multiple times for the same service, once to the general contractor and again to the subcontractor and supplier) "may seem unfair" the exclusion of other defenses aside from those listed in CERCLA "'can and does lead to harsh results, but we are obliged to enforce the law as Congress has written it, unless, of course, such law violates some provision of the Constitution,'" Blasland, Bouck & Lee, supra, 283 F.3d at 1305 (quoting United States v. Mexico Feed and Seed Co., 980 F.2d 478, 484 n.5 (8th Cir. 1992)). In that case, the Eleventh Circuit upheld paying a private, profit-making enterprise for cleaning a site as not being

the "normal CERCLA 'innocent plaintiff' case," id. at 1306. Defendant could have avoided this liability (and protected itself from potential multiple payments for the same rendered services) by requiring the general contractor to bond its payments to its subcontractors and suppliers (cf., e.g., Docket No. 12, Stipulation ¶ 5). Defendant, in fact, had bonding requirements for AAA performance and payment of subcontractors and suppliers in its original contract with AAA but amended the contract to waive that requirement (Docket No. 12, Pl. Atty. Aff. ¶ 10, Ex. 6, Remediation Contract, Art. 5, § 5.01 "Performance, Payment, and Other Bonds, Tighe & Bond Addendum No. 1, at A1-1 to A1-2; see also Docket No. 4, Ans. ¶ 7; Docket No. 13, Def. Statement ¶ 5; Docket No. 13, Marineau Aff. ¶ 6). Plaintiff also argues that defendant apparently waived another requirement that AAA submit affidavits that previous progress payments were applied to pay all subcontractors and suppliers prior to defendant paying AAA (Docket No. 12, Pl. Atty. Aff. ¶ 11), enforcement of that provision (and the provision for conditioning final payment to AAA upon disclosure of either unsettled claims or receipts or releases obtained from suppliers and subcontractors) would have kept defendant informed whether AAA was paying its subcontractors and suppliers.

Therefore, plaintiff's motion for partial summary judgment (Docket No. 12) as to liability should be **granted** and defendant's motion for summary judgment dismissing the Complaint should be **denied**.

B. National Contingency Plan

There is little dispute whether plaintiff proved the elements for a CERCLA cost recovery claim, save defendant's contention that these costs are not consistent with the National Contingency Plan (or "NCP") (Docket No. 13, Def. Memo. at 6-8). Defendant makes this

13

argument because it was the sole responder on the Site and plaintiff only removed waste from the premises to a licensed landfill (id. at 7). Defendant concedes, however, that there was full compliance with the NCP in this remediation (id. at 6-7; see also Docket No. 14, Pl. Memo. in Opposition at 2 , 7).

Here, plaintiff provided one portion of remediation defendant concedes complied with the NCP. CERCLA provides that the owner is responsible for costs of response incurred by "any other person" consistent with the NCP, that is the "cost-effective course of action to protect public health and the environment," Washington State Dep't of Transp. v. Washington Natural Gas Co., 59 F.3d 793, 802 (9th Cir. 1995); see 42 U.S.C. § 9621(b)(1). CERCLA does not require the person providing remediation to ensure that these costs are consistent with the NCP, that obligation is on the owner of the facility. Even if consistency with the NCP is considered, it is reviewed on a "substantial compliance" standard for the entire remediation (Docket No. 14, Pl. Memo. in Opposition at 8 n.4 (citing cases)) and defendant here is not questioning whether plaintiff's portion of the remediation needs to be examined. Defendant is merely seeking to avoid the potential of paying twice for the same remediation services by arguing that plaintiff was outside of the NCP process. Thus, defendant's motion for summary judgment (Docket No. 13) on this ground should be **denied** and plaintiff's motion for partial summary judgment (Docket No. 12) on this issue should be **granted**.

III.    Affirmative Defenses

Plaintiff also argues that defendant's affirmative defenses and counterclaims should be stricken (Docket No. 12, Pl. Memo. at 12-15). Defendant counters that such an action is premature at this time, given that there had been no discovery on these assertions and that some

of the defenses relate to damages (Docket No. 15, Def. Memo. in Opposition at 5, 6). Plaintiff replies that these are summary judgment motions and motions to dismiss and defendant could have sought discovery on any of its affirmative defenses or counterclaims while these motions were pending, that the stipulated facts were sufficient to consider these motions (Docket No. 17, Pl. Reply Memo. at 7). Plaintiff points out that affirmative defenses three, thirteen, and seventeen involve liability that is raised in plaintiff's motion (and in defendant's motion as well) (id. at 8).

Defendant did not file an affidavit, pursuant to Rule 56(f), claiming that it could not present facts essential to justify opposing summary judgment against its defenses and counterclaims, see Fed. R. Civ. P. 56(f) (giving court options in this situation of denying the motion for summary judgment, ordering a continuance so that an affidavit be obtained or discovery conducted, or issue any other just order). Instead, it pressed on with its arguments to sustain its defenses and counterclaims. These are summary judgment motions, as noted by plaintiff (Docket No. 17, Pl. Reply Memo. at 7), and not a motion to dismiss under Rule 12(f), thus the Court could go beyond the pleadings and determine these motions based upon the admissible evidence presented by the parties.

The result of these motions has some impact on defendant's affirmative defenses. The ninth affirmative defense (Docket No. 4, Ans. ¶ 20), barring recovery of damages other than "response costs," is a damages phase issue. The third, thirteenth, and seventeenth affirmative defenses provide bases for denying defendant's liability for damages (Docket No. 17, Def. Reply Memo. at 8) but does not reach the amount owed (the damage issue). But plaintiff's motion reaches the liability aspects of these defenses, that is, whether defendant is not liable (or has

reduced liability) without determining the amounts involved. Given the limited number of recognized defenses under CERCLA, as discussed above, defendant's affirmative defenses should be **dismissed** and plaintiff's motion for partial summary judgment on this ground **granted**.

## CONCLUSION

Based upon the above, it is recommended that plaintiff's motion for partial summary judgment (Docket No. 12) be **granted** and defendant's motion for summary judgment (Docket No. 13) be **denied**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) (effective December 1, 2009) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

/s/ Hugh B. Scott
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
June 17, 2010